IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAELIA RENYA BARBER,  )
        )
    Plaintiff,  )
        )
  -vs-  )  Civil Action No. 13-1422
        )
CAROLYN W. COLVIN,  )
COMMISSIONER OF SOCIAL SECURITY,  )
        )
    Defendant.  )

AMBROSE, Senior District Judge.

**OPINION
and
ORDER OF COURT**

**SYNOPSIS**

Michaelia Renya Barber ("Barber") filed an application for supplemental security income ("SSI"), based in part, upon attention deficit disorder and anxiety.[1] Her claim was denied following a hearing and the Appeals Council denied her request for review. Barber then filed this appeal under 42 U.S.C. § 405(g).

Before the Court are Cross-Motions for Summary Judgment. (Docket Nos. [9] and [13]). Both parties have filed Briefs in Support of their Motions. (Docket Nos. [10] and [14]). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting the Defendant's Motion for Summary Judgment and denying the Plaintiff's Motion for Summary Judgment.

**I. BACKGROUND**

Barber was born on May 22, 1982, making her a "younger individual" at the time of the hearing. (R. 45) She is single, has two children ages seven and ten, and lives with her parents

---

[1] Barber also complained of chronic back and shoulder pain before the ALJ (R. 44, 50) but does not advance those claims here. *See* ECF Docket No. [10], p. 3.

1

and grandmother. (R. 45, 50). Although she did not graduate from high school, she obtained her GED and subsequently received a certificate for computer training from the Private Industry Council. (R. 46) She has no past relevant work. (R. 49) Barber alleges a disability beginning on January 1, 2009.

As stated above, the ALJ denied Barber's request for benefits. Specifically, the ALJ determined that Barber retained the residual functional capacity to perform light work with some modifications. Specifically, the ALJ imposed certain postural and environmental restrictions and added that Barber "should work in a low-stress environment with no production line or assembly line type of pace and no independent decision making responsibilities, she would be restricted to unskilled work involving only routine and repetitive instructions and tasks; she should have no interaction with the general public; and she should have no more than occasional interaction with co-workers or supervisors." (R. 30) Barber appeals.

## II. LEGAL ANALYSIS

### A) Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360

(3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B) Discussion**

Barber attacks the ALJ's findings in two respects. First, Barber contends that the ALJ erred with respect to his treatment of the opinion of the consultative examiner. Second, Barber urges that the ALJ's findings regarding residual functional capacity ("RFC") are not supported by substantial evidence of record. I reject both arguments.

       1)       Consultative Examiner

Dr. John Carosso conducted a psychological examination of Barber on April 23, 2010. (R. 274-282) He indicated that she had "low average to borderline" intelligence and rated her GAF at 58. (R. 278, 280) He opined that she was "moderately" impaired in her ability to understand and carry out short, simple instructions. (R. 280-81). He also described her as "extremely" impaired in her ability to understand, remember and carry out detailed instructions. (R. 281) He stated that Barber was "markedly" impaired in her ability to make judgments on simple work-related decisions. (R. 281) In support of these conclusions, Carosso explained that Barber "tends to have a short attention-span and [is] easily distracted." (R. 281) He similarly found her to suffer "moderate" impairments in her ability to interact appropriately with co-workers and supervisors and to respond appropriately to changes in a routine work setting. (R. 281) He described her as "markedly" impaired in her ability to interact appropriately with the public and "extremely" impaired in her ability to respond appropriately to work pressures in a usual work setting. (R. 281)

The ALJ accorded Dr. Carosso's opinions "limited weight." (R. 34) He found the opinion less persuasive because of internal inconsistencies, conflicts with other substantial evidence of record and because of a belief that Dr. Carosso relied too heavily upon Barber's own subjective and unverifiable assertions. (R. 34-35) Although Barber contends that the ALJ erred in these conclusions, and in according more weight to the opinion of a nonexamining medical source, I disagree. My review of the evidence and of the ALJ's opinion convinces me that he weighed the evidence in accordance with the governing regulations and that his decision is

4

supported by substantial evidence of record.

For instance, substantial evidence of record supports the ALJ's conclusion that Dr. Carosso's conclusions are inconsistent with his own notes. Dr. Carosso himself noted that Barber's concentration was "fair." (R. 277) Dr. Carosso also described her as having "good language ability and [stated that she] was able to identify objects and describe their use." He also noted that she "was able to read and follow direction and repeat a statement accurately." (R. 277) Further, he acknowledged that "she was able to follow a multiple step command when asked to take a piece of paper with her right hand, fold it in half, and place it on her lap she completed this task in a reasonable amount of time and with what appeared to be minimal difficulty." (R. 277) He noted that Barber was "also able to write a complete sentence and used appropriate punctuation and grammar." (R. 277) Dr. Carosso documented that Barber had an 84% chance of having an IQ of 85 or greater. (R. 278) Dr. Carosso's report also reveals that Barber was able to engage in abstract thinking. With respect to Barber's alleged difficulty in interacting with others, Dr. Carosso himself observed that she "maintained eye contact and her speech was clear with normal fast rate but normal tone" and that she "remained engaged and cooperative and had little problem following conversation." (R. 277) Further, he acknowledged that she lived with a boyfriend.

Similarly, substantial evidence of record supports the ALJ's conclusion that Dr. Carosso's findings are inconsistent with other evidence of record. The record establishes that Barber obtained a GED as well as a certificate in a computer course. Additionally, the state agency psychologist who reviewed Barber's records found that, although Barber's ability to understand, remember and carry out complex and detailed instructions is limited, "[s]he can perform simple, routine, repetitive work in a stable environment [a]nd is able to carry out very

5

short and simple instructions." (R. 285)[2] Dr. Brentzel also found that Barber was capable of maintaining "socially appropriate behavior" and of functioning "in production oriented jobs requiring little independent decision making." (R. 285)  Barber's activities of daily living are also at odds with Dr. Carosso's opinion.  For instance, she retains a driver's license (R 58), cares for her two young daughters (R. 45), does grocery shopping and attends to her own personal needs.  She performs household chores such as doing laundry and vacuuming. (R. 57) The record also indicates that Barber was mentally stable enough to take in a 13-year-old niece to shield her from an abusive situation. (R. 33, 474) Further, although Barber contends that her ADD and anxiety are disabling impairments, the medical records reveal sporadic mental health treatment. As the ALJ noted, Barber voluntarily discontinued treatment for a six-month period because she was doing so well. (R. 32, 476, 486) The mental health records typically detail financial or family triggers for stress. (R. 232, 233, 470, 474) Additionally, her physicians repeatedly note, when questioned, Barber denied any symptoms of anxiety and panic attacks. (R. 235, 236, 237, 474, 482, 484, 494) Finally, the records indicate that when Barber is medication compliant, her concentration and focus "improve significantly." (R. 480)

Thus, I find that the ALJ discharged his duty under SSR 96-6p and 20 C.F.R. § 416.927(c) to properly weigh Dr. Carosso's report, and explain "with good reasons" the basis for rejecting Dr. Carosso's conclusions.  Contrary to Barber's assertions, the ALJ did build a logical bridge between the evidence and his rejection of Dr. Carosso's conclusion.  Consequently, I affirm the ALJ's finding in this regard.

        2)      Residual Functional Capacity

---

[2] Barber cites to the decision rendered in *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000) for the proposition that the ALJ should not have relied on Dr. Brentzel's opinion here because it was issued almost a year before the hearing and was not based upon the full record. *See* ECF Docket No. [10], p. 13. I find Barber's argument in this regard unpersuasive. First, the ALJ's decision does not rest entirely upon the opinion of the state agency psychological consultant. Rather, as stated above, Dr. Brentzel's opinion was consistent with the weight of the evidence. Second, to the extent that it should be adjudged unreliable because it was issued too early, then so too should the report of Dr. Carosso, given that it was rendered prior to Dr. Brentzel's.

As stated above, the ALJ determined that Barber had the residual functional capacity ("RFC") to perform light work with the following relevant restrictions: she should work in low-stress environments with no production line or assembly line type of pace and no independent decision making responsibilities; she would be restricted to unskilled work involving only routine and repetitive instructions and tasks; she should have no interaction with the general public; and she should have no more than occasional interaction with co-workers or supervisors. (R. 30) Barber contends that this finding is inadequate because it fails to take into account his finding, at step three of the analysis, that she had deficiencies in "concentration, persistence and pace." Barber relies upon the Third Circuit's decision in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) in support of her contention. *See Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) (remanding where the hypothetical question posed to the vocational expert did not accurately convey all of the claimant's impairments, which included issues of concentration, persistence and pace).

I reject Barber's contentions. Here, the ALJ found that Barber had only "moderate" difficulties with respect to concentration, persistence and pace. (R. 29) In *McDonald v. Astrue*, 293 Fed. Appx. 941 (3d Cir. 2008), the Court of Appeals for the Third Circuit found that where a claimant had only "moderate" limitations in this regard, it was proper for the ALJ to include in his hypothetical that the individual be limited to "simple, routine tasks." *McDonald*, 293 Fed. Appx. at 946-47. Thus, the Third Circuit Court distinguished the case before it from that in *Ramirez*, where the claimant had "often" suffered from deficiencies in concentration, persistence and pace. *Id*., 293 Fed. Appx. at 946 n. 10. Following the dictates of *McDonald*, the ALJ's hypothetical is consistent with the limitations he found, which, as set forth above, are supported by substantial evidence of record.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAELIA RENYA BARBER,           )
                                  )
         Plaintiff,               )
                                  )
    -vs-                          )     Civil Action No. 13-1422
                                  )
CAROLYN W. COLVIN,                )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
         Defendant.               )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

THEREFORE, this 30th day of September, 2014, it is ordered that the decision of the ALJ is affirmed. The Defendant's Motion for Summary Judgment (Docket No.13) is granted and the Plaintiff's Motion for Summary Judgment (Docket No.9) is denied.

                BY THE COURT:

                s/ Donetta W. Ambrose
                   Donetta W. Ambrose
                   United States Senior District Judge